FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

# Mar 05, 2021

SEAN F. MCAVOY, CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

CARL G.,[1]

               Plaintiff,

    v.

ANDREW M. SAUL, the Commissioner of Social Security,

               Defendant.

No.    4:20-CV-5068-EFS

**ORDER GRANTING PLAINTIFF'S SUMMARY-JUDGMENT MOTION AND DENYING DEFENDANT'S SUMMARY-JUDGMENT MOTION**

Before the Court are the parties' cross summary-judgment motions.[2] Plaintiff Carl G. appeals the denial of benefits by the Administrative Law Judge (ALJ). He alleges the ALJ erred by 1) discounting Plaintiff's symptom reports, 2) improperly weighing the medical opinions, and 3) improperly crafting Plaintiff's residual functional capacity. In contrast, Defendant Commissioner of Social

---

[1] To protect the privacy of the social-security Plaintiff, the Court refers to him by first name and last initial or by "Plaintiff." *See* LCivR 5.2(c).

[2] ECF Nos. 18 & 19.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

1

2  Security asks the Court to affirm the ALJ's decision finding Plaintiff not disabled.

3  After reviewing the record and relevant authority, the Court grants Plaintiff's

4  Motion for Summary Judgment, ECF No. 18, and denies the Commissioner's

Motion for Summary Judgment, ECF No. 19.

5

6                    **I.    Five-Step Disability Determination**

7        A five-step sequential evaluation process is used to determine whether an

8  adult claimant is disabled.[3] Step one assesses whether the claimant is currently

9  engaged in substantial gainful activity.[4] If the claimant is engaged in substantial

10  gainful activity, benefits are denied.[5] If not, the disability-evaluation proceeds to

step two.[6]

11

12        Step two assesses whether the claimant has a medically severe impairment,

13  or combination of impairments, which significantly limits the claimant's physical

14  or mental ability to do basic work activities.[7] If the claimant does not, benefits are

denied.[8] If the claimant does, the disability-evaluation proceeds to step three.[9]

15

16  _____

17  [3] 20 C.F.R. §§ 404.1520(a), 416.920(a).

18  [4] *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

19  [5] *Id.* §§ 404.1520(b), 416.920(b).

20  [6] *Id.*

21  [7] 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

22  [8] *Id.* §§ 404.1520(c), 416.920(c).

[9] *Id.*

23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Step three compares the claimant's impairment(s) to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[10] If an impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[11] If an impairment does not, the disability-evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work he performed in the past by determining the claimant's residual functional capacity (RFC).[12] If the claimant is able to perform prior work, benefits are denied.[13] If the claimant cannot perform prior work, the disability-evaluation proceeds to step five.

Step five, the final step, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national economy—considering the claimant's RFC, age, education, and work experience.[14] If so, benefits are denied. If not, benefits are granted.[15]

---

[10] *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

[11] *Id.* §§ 404.1520(d), 416.920(d).

[12] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[13] *Id.*

[14] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

[15] 20 C.F.R. §§ 404.1520(g), 416.920(g).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 3

1

2

3

The claimant has the initial burden of establishing entitlement to disability benefits under steps one through four.[16] At step five, the burden shifts to the Commissioner to show that the claimant is not entitled to benefits.[17]

## II.    Factual and Procedural Summary

Plaintiff filed Title II and XVI applications, alleging an amended disability onset date of June 1, 2014.[18] His claims were denied initially and upon reconsideration.[19] A video administrative hearing was held before Administrative Law Judge Stewart Stallings.[20]

In denying Plaintiff's disability claims, the ALJ made the following findings:

- Plaintiff met the insured status requirements through March 31, 2019;

- Step one: Plaintiff had not engaged in substantial gainful activity since June 1, 2014, the alleged onset date;

- Step two: Plaintiff had the following medically determinable severe impairments: degenerative disc disease of the lumbar spine, left shoulder impingement, right shoulder acromioclavicular (AC) joint

---

[16] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[17] *Id.*

[18] AR 64 & 159.

[19] AR 66-75 & 77-86.

[20] AR 33-65.

labrum tear, affective disorder (depression/bipolar), anxiety disorder,

attention deficit hyperactivity disorder (ADHD), and cannabis use

disorder;

- Step three: Plaintiff did not have an impairment or combination of

  impairments that met or medically equaled the severity of one of the

  listed impairments;

- RFC: Plaintiff had the RFC to perform sedentary work with the

  following limitations:

  [Plaintiff] can lift up to ten pounds occasionally. [Plaintiff] can
  stand or walk up to two hours, and sit up to eight hours, of an
  eight-hour workday with normal breaks. [Plaintiff] requires a
  sit/stand option allowing him to change between sitting and
  standing positions every 30 minutes for up to five minutes while
  remaining at the workstation. [Plaintiff] can occasionally climb
  ramps or stairs, but can never climb ladders, ropes, or scaffolds.
  [Plaintiff] can occasionally stoop, rarely (15% or less) crouch,
  and never kneel or crawl. [Plaintiff] is limited to occasional
  overhead reaching with the right upper extremity. [Plaintiff]
  must avoid all use of moving or dangerous machinery and
  unprotected heights. [Plaintiff] requires simple routine,
  repetitive work in which concentration is not critical (defined as
  careful and exact evaluation and judgment), and is limited to
  occasional interaction with supervisors.

- Step four: Plaintiff was not capable of performing past relevant work;

  and

- Step five: considering Plaintiff's RFC, age, education, and work

  history, Plaintiff could perform work that existed in significant

1

2

numbers in the national economy, such as laminator, final assembler, and bench assembler.[21]

When assessing the medical-opinion evidence, the ALJ gave:

- considerable weight to the examining opinion of Mark Johnson, PT;

- partial weight to the treating provider Mark Flesher, M.D.;[22]

- limited weight to the examining opinion of Scott Roberts, ARNP; and

- little weight to the examining opinions of William Drenguis, M.D. and Tabita Lewis, ARNP, and the opinions of the State agency consultants.[23]

The ALJ also found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.[24]

---

[21] AR 18-26.

[22] The ALJ was unable to identify Dr. Flesher as the medical professional who completed a functional assessment of Plaintiff in March 2017 and referred to him as an unknown medical professional within his opinion. AR 24.

[23] AR 23-25.

[24] AR 22.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 6

1

2

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[25] Plaintiff timely appealed to this Court.

### III.    Standard of Review

A district court's review of the Commissioner's final decision is limited.[26] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[27] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[28] Moreover, because it is the role of the ALJ and not the Court to weigh conflicting evidence, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[29] The Court considers the entire record as a whole.[30]

---

[25] AR 1-3.

[26] 42 U.S.C. § 405(g).

[27] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[28] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[29] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[30] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.); *Black v. Apfel*, 143 F.3d 383, 386 (8th

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Further, the Court may not reverse an ALJ decision due to a harmless error.[31] An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."[32] The party appealing the ALJ's decision generally bears the burden of establishing harm.[33]

## IV.    Analysis

**A.    Plaintiff's Symptom Reports: Plaintiff establishes consequential error.**

Plaintiff argues the ALJ failed to provide valid reasons for rejecting his symptom reports. When examining a claimant's symptom reports, the ALJ must make a two-step inquiry. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[34] Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific,

_____

Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[31] *Molina*, 674 F.3d at 1111.

[32] *Id.* at 1115 (quotation and citation omitted).

[33] *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

[34] *Molina*, 674 F.3d at 1112.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 8

clear and convincing reasons' for the rejection."[35] Here, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms inconsistent with daily activities and the objective medical evidence.[36]

First, the ALJ discounted Plaintiff's symptom reports because they were inconsistent with his activities of daily living.[37] If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms.[38] The ALJ highlighted that Plaintiff could care for his dog, including regular walks, had no difficulties with self-care (dressing, grooming, and bathing), was able to prepare meals, and finish household chores (laundry, dishes, vacuuming, dusting, and miscellaneous repairs).[39] The ALJ also highlighted that Plaintiff took care of his school-aged son. In order for Plaintiff's cited activities to be deemed "high-functioning activities of daily living" constituting a clear and convincing reason to discount Plaintiff's symptoms, the ALJ needed to have more meaningfully articulated this finding.

---

[35] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036).

[36] AR 22-23.

[37] AR 24.

[38] *Molina*, 674 F.3d at 1113.

[39] AR 23, 44-57, & 274-81.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

These cited activities, which can be achieved in relatively short periods of time and with breaks after each activity, as Plaintiff testified to, and not on an everyday basis, do not "contradict claims of a totally debilitating impairment."[40]

Lastly, the ALJ discounted Plaintiff's symptom reports because they were inconsistent with the objective medical evidence, specifically evidence of a normal gait, station, strength, muscle tone, and negative straight leg raise testing.[41] As to the ALJ's finding that Plaintiff's symptom reports were inconsistent with the objective medical evidence, symptom reports cannot be solely discounted on the grounds that they were not fully corroborated by the objective medical evidence.[42] Thus, having determined Plaintiff's daily activities – the only other reason the ALJ discounted Plaintiff symptom reports – were not a clear and convincing reason to discount Plaintiff's symptom reports, remand is necessary to reassess Plaintiff's subjective symptom claims. As to Plaintiff's household chores, self-care, providing for a school aged child, frustration, and anger, the ALJ must more meaningfully explain how such activities are inconsistent with Plaintiff's reported back pain and related limitations, limited range of motion of upper extremities, and difficulties getting along with others.

---

[40] *Molina*, 674 F.3d at 1112-13.

[41] AR 22.

[42] *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 10

**B.    Medical Opinions: Plaintiff establishes consequential error.**

Plaintiff also challenges the lack of manipulated limitations, as opined by Mark Johnson, PT, in the RFC after the ALJ assigned considerable weight to the opinion of Mr. Johnson. Plaintiff also challenges the ALJ's assignment of limited weight to Scott Roberts, ARNP and Tabita Lewis, ARNP, and partial weight to Mark Flesher, M.D. The Court determines the ALJ erred because his weighing of these medical opinions is neither supported by substantial evidence nor meaningfully explained.

1.    Standard

The weighing of medical opinions is dependent upon the nature of the medical relationship, i.e., 1) a treating physician, 2) an examining physician who examines but did not treat the claimant, and 3) a reviewing physician who neither treated nor examined the claimant.[43] Generally, more weight is given to the opinion of a treating physician than to an examining physician's opinion and both treating and examining opinions are to be given more weight than the opinion of a reviewing physician.[44]

When a treating physician's or evaluating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and when it is contradicted, it may be rejected for "specific

---

[43] *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

[44] *Id.*; *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

and legitimate reasons" supported by substantial evidence.[45] A reviewing physician's opinion may be rejected for specific and legitimate reasons supported by substantial evidence, and the opinion of an "other" medical source[46] may be rejected for specific and germane reasons supported by substantial evidence.[47] The opinion of a reviewing physician serves as substantial evidence if it is supported by other independent evidence in the record.[48]

    2.   <u>Mr. Johnson</u>

On February 15, 2018, Mr. Johnson performed a functional capacity evaluation of Plaintiff.[49] Mr. Johnson opined that Plaintiff was limited in the following activities:  frequently lift 10 pounds; occasionally lift 12.5 pounds; some limitations in forward bending, standing, crouching, kneeling, and walking; slight

---

[45] *Lester*, 81 F.3d at 830.

[46] *See* 20 C.F.R. § 404.1502 (For claims filed before March 27, 2017, acceptable medical sources are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, qualified speech-language pathologists, licensed audiologists, licensed advanced practice registered nurses, and licensed physician assistants within their scope of practice—all other medical providers are "other" medical sources.).

[47] *Molina*, 674 F.3d at 1111; *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009).

[48] *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

[49] AR 316-27.

limitations in standing (frequently needs to lean against objects), stairs, and sitting; slight and significant limitations in the active range of motion of spine; slight and significant limitations in the active range of motion of shoulder, elbow, and wrist; and slight and significant limitations in advance range of motion of hip, knees, and ankle.

The ALJ assigned "considerable weight" to Mr. Johnson's opined limitations and "incorporated [them] into the assigned residual capacity."[50] The ALJ opined "Mr. Johnson completed a thorough and detailed examination, including specific testing designed to determine specific capacities. . . backed by findings of abnormalities found in functional testing, gait, range of motion, and strength. It is generally consistent with the overall record, including most of the [Plaintiff's] allegations."[51]

Plaintiff argues the ALJ failed to incorporated Mr. Johnson's range of motion limitations in Plaintiff's shoulders, grip strengths, and fine motor skills.[52] The Commissioner agrees "the ALJ essentially adopted the functional limitations Mr. Johnson assessed" but argues that "Plaintiff's disagreement with the RFC assessment simply constitute his own interpretation of the evidence."[53]

---

[50] AR 23.

[51] *Id.*

[52] ECF No. 18 at 11.

[53] ECF No. 19 at 15.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

On this record, it is unclear what limitations the ALJ intended regarding Plaintiff's upper extremity fingering and handling limitations. The RFC limits Plaintiff to "occasional overhead reaching with the right upper extremity." Yet, the ALJ did not explain why the RFC limited only overhead reaching when Mr. Johnson seemingly opined limitations in Plaintiff reaching, fingering, and handling (shoulder, elbow, wrist, and hands). Mr. Johnson's physical examination of Plaintiff revealed the following in Plaintiff's range of motion: shoulder forward flexion right 150 and left 155 (normal 180), extension right and left 40 (normal 60), and abduction right 125 and left 117 (normal 180); elbow flexion right and left 145 (normal 150), and extension right and left -15 (normal 0); wrist flexion right and left 65 (normal 80), extension right 55 and left 45 (normal 70), ulnar deviation right and left 25 (normal 30), and radial deviation right and left within normal limits; and gross hand motion right and left within normal limits.[54] Considering Mr. Johnson's physical examination findings, it seems that Mr. Johnson limited Plaintiff to not only occasional overhead reaching but also handling and fingering limitations. Yet, while the ALJ gave "considerable weight" to Mr. Johnson's opinion, the RFC only restricted overhead reaching.

_____

[54] AR 323. Comments/Quality of Motion – Upper Quarter: "Slightly limited AROM with B elbow flexion, B elbow extension, B wrist flexion, R wrist extension, and B wrist ulnar deviation. Significantly limited AROM B shoulder flexion, B shoulder extension, B should ABD, and L wrist extension." *Id*.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 14

This discrepancy is consequential because the vocational expert testified that there were no sedentary jobs available if Plaintiff was limited to only occasionally handling and fingering.[55] Without more explanation by the ALJ, it is unclear whether the ALJ intended the RFC to include limitations in fingering and handling.

### 3. Scott Roberts, ARNP

Mr. Roberts was Plaintiff's primary care physician since fall 2014. In March and May 2018, Mr. Roberts completed a functional assessment of Plaintiff. Mr. Roberts diagnosed Plaintiff with degenerative disc disease and chronic back pain and opined Plaintiff would need to lie down during the day for 1 hour for increased back pain, miss 1-2 days of work a week because of pain, and be limited to light work.[56]

The ALJ discounted Mr. Roberts' opinion because 1) he did not cite to examination findings or other objective or observational evidence in support of his opined limitations, 2) other opinion evidence and functional testing are more consistent with sedentary work, and 3) Plaintiff's daily activities were inconsistent with the level of absenteeism.[57]

---

[55] AR 61.

[56] AR 331-32 & 381-83.

[57] AR 23-24.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

First, the ALJ's finding that Mr. Roberts' check-box opinion was not explained is not supported by substantial evidence.[58] Individual medical opinions are preferred over check-box reports.[59] An ALJ may permissibly reject opinions that do not offer any explanation for their limitations.[60] However, if treatment notes are consistent with the opinion, a check-box opinion may not automatically be rejected.[61] Here, Mr. Roberts referenced an x-ray and MRI of Plaintiff's lumbar spine in his functional assessment of Plaintiff.[62] Additionally, the record contains

---

[58] *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (recognizing that a medical opinion may be rejected if it is conclusory or inadequately supported).

[59] *Id.*; *Crane v. Shalala,* 76 F.3d 251, 253 (9th Cir. 1996).

[60] , 554 F.3d at 1228; *Crane,* 76 F.3d at 253.

[61] *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Garrison*, 759 F.3d at 1014.

[62] The MRI revealed mild reversal of lumbar lordosis, Grade 1 retrolisthesis of L5 on S1, lumbosacral transitional anatomy, small left foraminal annular fissure and disc protrusion at L5-S1 with mild to moderate left neural foraminal stenosis, possible impingement on left L5 nerve root, mild right neural foraminal stenosis, mild spinal canal and mild bilateral neural foraminal stenosis at L2-L3, an mild bilateral neural foraminal stenosis L3-L4 and L4-L5. AR 310. The x-ray revealed minimal grade 1 retrolisthesis of L5 on S1, unchanged on flexion, extension, and

multiple treatment notes by Mr. Roberts where Plaintiff exhibited back pain and difficulty with the range of motion of his arms – treatment notes not discussed by the ALJ. [63]

Second, the ALJ discounted Mr. Roberts' light work limitation because "[o]ther opinion evidence, functional testing, and [Plaintiff's] allegations are more consistent with sedentary work."[64] Any error in the ALJ rejecting Mr. Johnson's light-work limitation was harmless because the ALJ included a sedentary work limitation in the RFC.

---

neutral views, moderate facet arthropathy at L5-S1, slightly increased; maintained lumbar spine vertebral body heights, moderate disc degenerate changes seen at L2-L3 unchanged, and unchanged minimal S-shaped curvature of the thoracolumbar spine. AR 329.

[63] *See e.g.*, AR 602, 625, 631, 678, & 683 (positive for back pain); AR 684 (Plaintiff exhibits musculoskeletal tenderness, is unable to abduct right arm, passive abduction elicits severe pain, and tenderness noted over the anterior margin of the R glenohumeral joint); AR 700 (normal right shoulder x-ray); AR 699 (range of motion right shoulder: forward elevation 115 degrees, abduction 100 degrees, external rotation 80 degrees, internal rotation 35 degrees); & AR 781 (Plaintiff experiencing tenderness in the lumbar, moving forward with radiofrequency ablation).

[64] AR 23.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

   Lastly, the ALJ discounted Mr. Roberts' absenteeism limitation because it was inconsistent with Plaintiff's "robust level of daily activities."[65] An ALJ may discount a medical opinion that is inconsistent with the claimant's level of activity, such as school.[66] "[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace."[67] Here, as previously discussed, the ALJ failed to articulate how Plaintiff's activities (grocery shopping, vacuuming, dressing, grooming, bathing, preparing meals, etc.) conflict with Plaintiff's claims of needing to rest after completing each activity, laying down for an hour a day due to back pain, and being unable to complete activities on "bad days."

   4. <u>Mark Flesher, M.D.</u>

   Dr. Flesher is Plaintiff's primary care physician. On March 3, 2017, Dr. Flesher completed a functional assessment of Plaintiff.[68] Dr. Flesher diagnosed Plaintiff with back pain and opined sedentary work limitations, participation limits per week depending on the pain, and that Plaintiff would require frequent changes in sitting or standing, 30-60 minutes at a time.

---

[65] AR 23-24.

[66] *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).

[67] *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

[68] AR 367-69.

The ALJ gave partial weight to Dr. Flesher's opined limitations because he did not reference specific findings to support his opinion.[69] An ALJ may permissibly reject opinions that do not offer any explanation for their limitations.[70] However, if treatment notes are consistent with the opinion, a check-box opinion may not automatically be rejected.[71] The record contains treatment notes from Dr. Flesher discussing Plaintiff's back pain the ALJ was unable to review in correlation with Dr. Flesher's opined limitations because the ALJ was unable to identify who completed the functional assessment because the signature was illegible.[72] On remand, the ALJ is to reconsider Dr. Flesher's opined limitations, taking into consideration his treatment notes within the record.

  5.   Tabita Lewis, ARNP

On March 12, 2018, Ms. Lewis completed a mental source statement. Ms. Lewis opined the following limitations:

---

[69] AR 24.

[70] *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (recognizing that a medical opinion may be rejected if it is conclusory or inadequately supported); *Crane v. Shalala,* 76 F.3d 251, 253 (9th Cir. 1996).

[71] *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Garrison*, 759 F.3d at 1014.

[72] *See e.g.,* AR 833 (referral to neurology for migraines and low back pain); AR 835 (chronic back pain, awaiting MRI results); & AR 838 (chronic back pain).

- mildly limited in the ability to understand and remember very short and simple instructions;

- moderately limited in the ability to remember locations and work-like procedures; carry out detailed instructions; perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; work in coordination with or proximity to others without being distracted by them; and interact appropriately with the general public;

- markedly limited in the ability to maintain attention and concentration for extended periods; complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; respond appropriately to changes in the work setting; travel in unfamiliar places and use public transportation; and set realistic goals or make plans independently of others; and

- severely limited in the ability to understand and remember detailed instructions.

Based on these mental limitations, Ms. Lewis opined Plaintiff would be off-task 21-30 percent of the time and miss work 1 day per month.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

   The ALJ discounted Ms. Lewis' opinion because it was inconsistent with the longitudinal record, including Ms. Lewis' own evaluations.[73]

   The ALJ's finding that Ms. Lewis' opinion was inconsistent with the longitudinal medical record is rational and supported by substantial evidence. Whether a medical opinion is consistent with the longitudinal record is a factor for the ALJ to consider.[74] While the ALJ did not explain in the paragraph pertaining to Ms. Lewis why the opinion was inconsistent with the longitudinal record, in other sections of the opinion, the ALJ discussed portions of the medical record permitting the Court to meaningfully assess whether the ALJ's finding that Ms. Lewis' opinion was inconsistent with the longitudinal record relating to Plaintiff's impairments is supported by substantial evidence.[75] Here, the ALJ highlighted that, even though a single treatment note indicating poor delayed recall, the medical record showed treatment visits with no difficulties in memory or understanding.[76] The ALJ also highlighted that Plaintiff sporadically presented with mood disturbances, but on multiple occasions presented with normal mood,

---

[73] AR 24.

[74] *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007) (recognizing that the ALJ is to consider the consistency of the medical opinion with the record as a whole).

[75] *See id.*

[76] AR 20 (citing AR 397, 787, 831, 835, & 838).

affect, and behavior.[77] The ALJ also highlighted that the treatment records indicated normal concentration and attention span and improvement in concentration with medications. While there appeared to be conflicting medical evidence as to Plaintiff's mental limitations, it is the ALJ's role to weigh conflicting medical evidence. This was a germane reason supported by substantial evidence to discount Ms. Lewis' opined limitations.

**C.    RFC: The ALJ must reevaluate.**

Because the ALJ's RFC was based on an erroneous weighing of Plaintiff's symptom reports and the medical evidence, remand is required. The ALJ on remand must more meaningfully explain how Plaintiff's reported symptoms, including back pain, range of motion limitations, anger, and frustration, are inconsistent with the medical record and then reassess Plaintiff's RFC and proceed with a new step-five analysis.

**D.    Remand for Further Proceedings**

Plaintiff submits a remand for payment of benefits is warranted.

---

[77] AR 20 (citing AR 408, 411, 418, 464, 469, 475, 478, 626, 666, 774, & 831 (normal mood and affect) *compare with* (AR 395, 400, 402, 412, 423, 436, 439, 445, & 451 (frustration and irritable))).

The decision whether to remand a case for additional evidence, or simply to award benefits, is within the discretion of the court."[78] When the court reverses an ALJ's decision for error, the court "ordinarily must remand to the agency for further proceedings."[79]

The Court finds that further development is necessary for a proper disability determination. On remand, the ALJ is to reevaluate the medical opinion evidence, consider any additional evidence presented, meaningfully explain how Plaintiff's reported symptoms are inconsistent with the medical record and then reassess Plaintiff's RFC and proceed with a new step-five analysis.

### V.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 18**, is **GRANTED**.

2.    The Commissioner's Motion for Summary Judgment, **ECF No. 19**, is **DENIED**.

---

[78] *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

[79] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

3.      The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff

REVERSING and REMANDING the matter to the Commissioner of

Social Security for further proceedings consistent with this

recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

4.      The case shall be **CLOSED**.

**IT IS SO ORDERED.**  The Clerk's Office is directed to file this Order and

provide copies to all counsel.

**DATED** this 5th day of March 2021.


s/Edward F. Shea
EDWARD F. SHEA
Senior United States District Judge

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 24